**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **GREGORY HEBBLER and MARION HEBBLER** | § § § § | **PLAINTIFFS** |
| **v.** | § § § | Civil No. 1:23-cv-247-HSO-BWR |
| **STATE FARM FIRE AND CASUALTY COMPANY** | § § § | **DEFENDANT** |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S**
**MOTION [23] TO STRIKE PLAINTIFFS' EXPERT WITNESS RICH LYON**
**AND MOTION [25] FOR SUMMARY JUDGMENT**

BEFORE THE COURT are Defendant State Farm Fire and Casualty

Company's Motion [23] to Strike, seeking exclusion of Plaintiffs Gregory Hebbler

and Marion Hebbler's lone expert witness, Rich Lyon, and Motion [25] for Summary

Judgment, seeking dismissal of Plaintiffs' claims if the Court grants Defendant's

Motion [23] to Strike. Having considered the parties' submissions, the record, and

relevant legal authority, the Court finds that the Motion [23] to Strike Rich Lyon

should be granted, and that Defendant is entitled to summary judgment.

## I. BACKGROUND

A.  Factual background

Plaintiffs Gregory Hebbler and Marion Hebbler ("Plaintiffs") contracted with

Defendant State Farm Fire and Casualty Company ("Defendant" or "State Farm")

to insure their home located at 6009 Angler Drive, Picayune, Mississippi. Compl.

[1-1] at 2; *see also* Ex. [25-1]. On August 29, 2021, Hurricane Ida made landfall,

purportedly damaging the residence.  Compl. [1-1] at 2.  Plaintiffs submitted a claim under their homeowners insurance policy with Defendant on September 5, 2021, *see* Ex. [23-8], contending that their home "needs to be completely gutted[,]" and "requires a new roof, new windows, new decking, new sheet rock in ceilings and walls, new flooring, new insulation, and new baseboards and trim, among other things[,]"[1] Compl. [1-1] at 2.  Defendant conducted an on-site inspection and estimated the monetary damage caused by Hurricane Ida to be $2,051.73.  *Id.* at 2-3.  Because this figure fell below Plaintiffs' deductible, no payment was issued.  *Id.*

Plaintiffs filed suit on September 11, 2023, in the Circuit Court of Pearl River County, Mississippi, *see* Compl. [1-1] at 1, and Defendant removed to this Court, invoking federal diversity jurisdiction, *see* Not. [1].  The Court's Case Management Order [6] set August 5, 2024, as the discovery deadline, and required Plaintiffs to designate any expert witnesses by April 3, 2024.  *See* Order [6].  At Plaintiffs' request, the Court later extended their expert designation deadline to April 9, 2024. *See* Text Only Order, April 4, 2024.  Plaintiffs ultimately designated Rich Lyon ("Lyon") as their sole expert witness, referencing a June 7, 2023, Estimate [23-3] as his report, but they did not attach this Estimate [23-3] to their designation.  Ex. [23-1] at 1.  On July 1, 2024, almost three months after their expert designation deadline had passed, Plaintiffs submitted a supplemental designation, disclosing Lyon's Supplemental Report [25-19].  *See* Ex. [23-2].  Lyon was deposed on July 19, 2024.  *See* Not. [20].

---

[1] Plaintiffs repaired the roof in July 2023.  *See* Exs. [28-4], [28-5].

On August 19, 2024, Defendant filed the instant Motions [23], [25] to Strike Plaintiffs' Expert Witness Rich Lyon and for Summary Judgment.  *See* Mots. [23], [25].  Plaintiffs responded to both Motions [23], [25], *see* Resps. [28], [30], and Defendant filed Replies [32], [33], *see* Replies [32], [33].

B.    Lyon's reports

1.    The June 7, 2023, Estimate [23-3]

The June 7, 2023, Estimate [23-3] offered by Plaintiffs as Lyon's initial expert report contains only damage estimates and includes no narrative language, explanations, or opinions as to causation.  *See* Ex. [23-1]; June 7, 2023, Estimate [23-3].  The Estimate [23-3] valued the damage to Plaintiffs' property at $144,661.05, with no amount specified for depreciation.  June 7, 2023, Estimate [23-3] at 24.  The Estimate [23-3] is based on a June 5, 2023, inspection that was conducted by an independent contractor hired by Lyon.  *Id.* at 7.  Lyon did not inspect the property himself before signing the Estimate [23-3].  Lyon Depo. [28-6] at 7.  Lyon stated in his deposition that he did not recall who conducted the inspection, and that, even if he did, a nondisclosure agreement would prevent him from revealing the inspector's identity.  *Id.* at 7-8.  The Estimate [23-3] was primarily compiled by other independent contractors whom Lyon claimed he could not identify due to nondisclosure agreements.  *Id.* at 10-11 ("Q.  And some other estimators mostly completed the estimate prior to it getting to Kirk Moyer; is that correct?  A.  Yes.").  Then a "final review" of the Estimate [23-3] was conducted by Kirk Moyer ("Moyer"), another subcontractor hired by Lyon.  *Id.* at 10-11.  Lyon

testified that he did not specifically recall whether he spoke with Moyer about the Estimate [23-3], but he "know[s] it happens more often than not." *Id.* at 11.

2.    The Supplemental Report [25-19]

In his Supplemental Report [25-19], Lyon for the first time offers an opinion as to causation, stating that Hurricane Ida caused the damage to Plaintiffs' residence. Supplemental Report [25-19] at 6. This opinion is based upon "on-site inspections of the subject property, interviews with the property owner, . . . documentation provided to [him], [his] extensive work related to hurricanes [and] windstorms, and [his] accumulative experience in the construction and insurance industries gained over the past 25 years." *Id.* at 3. Lyon conducted an inspection of Plaintiffs' property on June 24, 2024, which resulted in him revising the June 7, 2023, damage estimate downward to $75,707.42, again with no deduction specified for depreciation.[2] *Id.* at 7, 84. Lyon's causation opinions as to Plaintiffs' roof are based on his review of photographs of the attic, which were taken during the June 5, 2023, inspection by the unknown independent contractor, and on November 2019 Google Earth Pro satellite and street images of the roof. *Id.* at 8; Lyon Depo. [28-6] at 13. Lyon himself did not visually inspect the attic. Lyon Depo. [28-6] at 13.

---

[2] In lieu of making his own estimations as to roof replacement costs, Lyon also provided a second damage estimate of $91,315.89, where he utilized the invoice from the contractor who repaired Plaintiffs' roof. Supplemental Report [25-19] at 7, 100.

C.    Defendant's Motions [23], [25]

1.    Defendant's arguments

Defendant asks the Court to exclude the June 7, 2023, Estimate [23-3] because it was made by unknown independent contractors, such that the Court cannot test the reliability of its factual underpinnings or methodologies.  Mem. [24] at 11-14.  Next, the Court should strike the Supplemental Report [25-19] because it is not supplemental, but is in fact a new report, and was produced by Plaintiffs over two and half months after the expert designation deadline.  *Id.* at 15-17.  Defendant avers that if the Court strikes Lyon's expert reports, he cannot testify at trial, and it would then be entitled to summary judgment because Plaintiffs cannot establish causation without expert testimony.  Mem. [26] at 7-9.  It points out that Lyon does not offer any opinions as to depreciation, so even if his reports were not excluded, it would still be entitled to summary judgment.  *Id.* at 9-10.  Alternatively, Defendant requests that the Court grant partial summary judgment on Plaintiffs' claims for punitive and extracontractual damages.  *Id.* at 11-17.

2.    Plaintiffs' Responses [28], [30]

Plaintiffs respond that whether the June 7, 2023, Estimate's [23-3] creators are disclosed is irrelevant because Lyon can easily discover their identities, and experts are not required to have firsthand knowledge to form opinions.  Mem. [29] at 17-19.  They do admit that Lyon does not proffer any opinion as to depreciation but point out that this does not preclude him from offering causation opinions as to any repaired items.  *Id.* at 19-20.  Plaintiffs take the position that Defendant has

5

waived its objection to the timeliness of Lyon's designation under the Local Uniform
Civil Rules, which require any objection to be made more than thirty days before
the discovery deadline, *id.* at 6-8 (citing L.U. Civ. R. 26(a)(3)), and that even if the
objection was not waived, Plaintiffs' late disclosure can be excused because they
paid out-of-pocket to repair their roof, *id.* at 9-10. Plaintiffs further argue that
Defendant is not prejudiced by the Supplemental Report [25-19] because it already
possessed all of the information contained in the Supplemental Report [25-19] and
Lyon is merely expanding upon already-disclosed opinions. *Id.* at 10-13.

Plaintiffs do concede that Defendant is entitled to summary judgment on
their extracontractual damages and punitive damages claims, Mem. [31] at 2-3, but
maintain that because the Court should not exclude Lyon, it should also deny
Defendant's Motion [25] for Summary Judgment, *id.* at 5. Plaintiffs further posit
that even if the Court grants summary judgment on their claims for unrepaired
items, Plaintiffs, as lay witnesses, and Lyon can still establish causation as to any
repaired items. *Id.* at 8.

3.  Defendant's Replies [32], [33]

Defendant counters that Lyon admitted in his deposition that "he did not
know the identity of the person who went out and inspected the property in June of
2023[,]" Reply [33] at 4-5 (citing Lyon Depo. [23-4]), and reasons that, because Lyon
relied solely on data from an unknown third party and did not make any
meaningful effort to verify the data, the June 7, 2023, Estimate [23-3] must be
excluded, *id.* It maintains that Plaintiffs attempt to miscast its objection to the

Supplemental Report [25-19] as an objection to Lyon's expert designation, when instead it is challenging the Supplemental Report [25-19] itself because "the 'supplemental' estimates are not supplemental," meaning the Supplemental Report [25-19] is an "untimely expert opinion[.]" *Id.* at 3-6.

And Defendant contends that without expert testimony on depreciation, Plaintiffs' claims as to unrepaired items cannot survive summary judgment. Resp. [32] at 3-5. Further, if the Court grants its Motion [23] to Strike, it must also grant Defendant's Motion [25] for Summary Judgment as to any repaired items because courts have "consistently held that claims for weather-related damage, including wind damage, require specialized knowledge under Rule 702 to show that the weather event caused the reported damage." *Id.* at 2-3.

## II. DISCUSSION

### A. Relevant law

### 1. Summary Judgment standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the "the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001) (quotations omitted).

If any genuine dispute of material fact exists "that a trier of fact may reasonably resolve in favor of either party, then summary judgment must be denied." *Ryder v. Union P. R.R. Co.*, 945 F.3d 194, 199 (5th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A court must "view the evidence in the light most favorable to the nonmovant and construe all reasonable inferences in her favor" and "may not evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (quotations omitted). "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (per curiam). "Rather, the party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).

2.    Standards applicable to expert testimony

a.    Disclosure of expert testimony

Under the Federal Rules of Civil Procedure, a person retained to provide expert testimony must provide a written report which contains: (1) a complete statement of all opinions the witness will express and the basis and reasons for them; (2) the facts or data considered by the witness in forming them; (3) any exhibits that will be used to summarize or support them; (4) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(5) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (6) a statement of the compensation to be paid for the study and testimony in the case. Fed. R. Civ. P. 26(a)(2)(B). Parties must make expert witness disclosures "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Local Uniform Civil Rule 26(a)(2) states that parties must make their required expert disclosures "no later than the time specified in the case management order[.]" L.U. Civ. R. 26(a)(2).

"Absent a finding of just cause, failure to make full expert disclosures by the expert designation deadline is grounds for prohibiting introduction of that evidence at trial." L.U. Civ. R. 26(a)(2); *see also Ashford v. Wal-Mart Stores, LP*, No. 1:11-CV-57-HSO-JMR, 2013 WL 152853, at *2 (S.D. Miss. Jan. 15, 2013). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Woulard v. Greenwood Motor Lines, Inc.*, No. 1:17CV231-HSO-JCG, 2019 WL 3311753, at *2 (S.D. Miss. Feb. 5, 2019).

A district court is given broad discretion in formulating sanctions for a violation of its scheduling or pre-trial orders. *See Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996); *Geiserman v. MacDonald*, 893 F.2d 787, 790-91 (5th Cir. 1990). In determining whether to exclude expert testimony as untimely, a court considers the following factors: "(1) the importance of the witnesses' testimony; (2) the prejudice to the opposing party of allowing the witness to testify;

(3) the possibility of curing such prejudice by a continuance; and (4) the explanation,

if any, for the party's failure to comply with the discovery order." *Jagneaux v.*

*United Rentals (N. Am.), Inc.*, No. 1:18CV186-LG-RHW, 2020 WL 1821256, at *4

(S.D. Miss. Apr. 10, 2020) (quoting *Sierra Club, Lone Star Chapter v. Cedar Point*

*Oil Co. Inc.*, 73 F.3d 546, 572 (5th Cir. 1996)).

b.   <u>Admissibility of expert testimony</u>

Federal Rule of Evidence 702 sets forth the standard for determining the

admissibility of expert testimony.  Rule 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  "The party offering the expert must prove by a preponderance of

the evidence that the proffered testimony satisfies the Rule 702 test."  *Mathis v.*

*Exxon*, 302 F.3d 448, 459-60 (5th Cir. 2002).  Trial courts act as "gatekeepers" for

the admissibility of expert testimony, making a "preliminary assessment of whether

the reasoning or methodology properly can be applied to the facts in issue."  *Daubert*

*v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 592-93 (1993); *see also Kumho Tire v.*

*Carmichael*, 526 U.S. 137, 147 (1999); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002).

In carrying out this gatekeeping function, a court must determine whether an expert's proffered testimony is relevant and reliable. *See Daubert*, 509 U.S. at 597. Expert testimony is relevant if it assists "the trier of fact to understand the evidence or to determine a fact in issue." *Id.* at 591 (quoting Fed. R. Evid. 702(a)). In addition, the proponent of the testimony "must prove by a preponderance of the evidence that the testimony is reliable." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (internal quotation marks omitted). If "there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered," a court may exclude the testimony as unreliable. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Courts consider five nonexclusive factors in conducting the reliability analysis: (1) whether the expert's technique can be or has been tested; (2) whether the method has been subjected to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *United States v. Perry*, 35 F.4th 293, 329 (5th Cir. 2022) (citing *Daubert*, 509 U.S. at 593-94).

B.      Analysis

1.      Plaintiffs' claims for any unrepaired items, extracontractual damages, and punitive damages

The parties do not dispute that Defendant is entitled to summary judgment on Plaintiffs' claims for extracontractual and punitive damages. *See* Mem. [31] at 2-3 ("[A]s Plaintiffs no longer challenge those portions of the underlying Motion dealing with extra-contractual and punitive damages, the Court should grant partial summary judgment in favor of State Farm."); Reply [33] at 1. The Court will grant summary judgment on these claims.

Turning to Plaintiffs' claims regarding any unrepaired items, their insurance policy with Defendant provides that it will not cover any damages unless a covered "peril," such as a hurricane, causes them. Ex. [25-1] at 23. And if the insured has not replaced or repaired an item damaged by a covered peril, Defendant will only compensate the item's "actual cash value," meaning the cost to repair or replace it less any depreciation in its value before the loss occurred. *See id.* at 12 ("'[A]ctual cash value' means the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation." (emphasis omitted)). On the other hand, "when the repair or replacement is actually completed, [Defendant] will pay the covered additional amount [Plaintiff] actually and necessarily spen[t] to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less." *Id.* at 29 (emphasis in original omitted). Simply put, without accounting for depreciation, Plaintiffs cannot

establish the "actual cash value" of any unrepaired items under the terms of the insurance policy.

Plaintiffs concede that they have not designated an expert to offer an opinion on depreciation. Mem. [31] at 5 ("Plaintiffs do not deny that Lyon's initial and supplemental estimates and reports offer no quantitative formulations for actual cash value or depreciation."). This alone is fatal to their claim for damages to any unrepaired items. *See Jackson v. State Farm Fire & Cas. Co.*, No. 1:23-CV-24-HSO-BWR, 2024 WL 1183670, at *6 (S.D. Miss. Mar. 19, 2024) (dismissing Plaintiffs' claims for unrepaired items because Plaintiffs lacked expert witness testimony "to establish depreciation, even though courts generally require expert testimony to establish depreciation"); *Penthouse Owners Ass'n v. Certain Underwriters at Lloyd's, London*, No. 1:07-CV-568-LTS-RHW, 2009 WL 617914, at *2 (S.D. Miss. Mar. 11, 2009) (discussing how issues of valuation of damages, including calculation of replacement cost value, actual cash value, and depreciation, in a property insurance dispute case require expert testimony). Because the policy requires Plaintiffs to establish the "actual cash value" of any unrepaired items in order to recover for them, and because Plaintiffs have no competent evidence to calculate depreciation, Defendant's Motion [25] for Summary Judgment should also be granted as to the claims for damage to unrepaired items.

2.   Defendant's challenge to the June 7, 2023, Estimate [23-3] offered as Lyon's expert report

Turning to Plaintiffs' remaining claims for repaired items, Defendant argues that these should be dismissed because expert testimony is required to establish

13

causation in a case such as this, and Lyon, Plaintiffs' lone causation expert, should be excluded. Mem. [26] at 7-9. The only repairs Plaintiffs have specified that they have made to their residence are to the roof. *See* Ex. [28-5]; *see also* Lyon Depo. [28-6] (stating that he does not believe that Plaintiffs have made any repairs to anything in the interior of the home or to any of the windows). Because expert testimony on causation is required in a case such as this, the Court must address Defendant's Motion [23] to Strike Lyon.[3] *See Jackson v. State Farm Fire & Cas. Co.*, No. 1:23-CV-24-HSO-BWR, 2024 WL 965613, at *10 (S.D. Miss. Mar. 6, 2024) (collecting cases) ("This Court has explained how structural damages to homes, the long-term effects of moisture on a house, and other categories of property damage require expertise to accurately understand, and are therefore not properly the subject of lay opinion on causation.").

Defendant argues that Plaintiffs' timely June 7, 2023, Estimate [23-3] is unreliable because it offered no causation opinions and because unknown independent contractors collected the data underlying the Estimate [23-3] and did the majority of the work creating it. Mem. [24] at 11-13. Lyon affirmed under oath that both the inspector and estimators' identities are protected by nondisclosure agreements, and he would not reveal them. Lyon Depo. [28-6] at 7-8, 10. Despite

---

[3] As for Plaintiffs' argument that they can offer lay testimony because "they were both physically present before, during, and after the storm and personally witnessed the destruction of their home[,]" Mem. [31] at 8, Plaintiffs have not explained what testimony they would provide and "have not cited any controlling legal authority that any lay witness is qualified to offer opinions on causation as it pertains to any of the additional losses allegedly sustained in this case[,]" *Duchmann v. State Farm Fire and Cas. Co.*, No. 1:23-cv-261-HSO-BWR, 2024 WL 4989320, at *4-6 (S.D. Miss. Dec. 5, 2024) (collecting cases) (discussing when lay testimony is acceptable to show causation and when expert testimony is required).

listing Lyon as the estimator, the work compiling the June 7, 2023, Estimate [23-3] was in fact performed by unknown individuals, most of whom Lyon either refuses to or cannot identify. *See* Lyon Depo. [28-6] at 7-8, 10-11. Moreover, it does not appear that Lyon made any serious effort to verify the information relied upon by the Estimate [23-3], and he outsourced that responsibility to another subcontractor, Moyer. Lyon Depo. [28-6] at 10-11. Lyon could only state that he *might* have been involved in the "final review process" of the estimate, which was primarily conducted by Moyer, and that he *may* have reviewed the Estimate [23-3]. *See, e.g.*, *id.* ("Q. You specifically recall that, talking to Mr. Moyer about it? A. I don't specifically recall it. I know it happens more often than not.").

While "[e]xperts are not required to prepare all the documents that support an opinion as long as the information is of the type reasonably relied on by experts in his field[,]" *Imperial Trading Co. v. Travelers Prop. Cas. Co. of Am.*, No. CIV.A. 06-4262, 2009 WL 2356292, at *4 (E.D. La. July 28, 2009), they "must undertake their own analyses and may not blindly rely on the opinions of others[,]" *Quintel Tech. Ltd. v. Huawei Techs. USA, Inc.*, No. 4:15-CV-307, 2018 WL 626355, at *9 (E.D. Tex. Jan. 30, 2018) (quotations omitted) ("[Federal Rule of Civil Procedure 26's requirements] impl[y] involvement other than perusing a report drafted by someone else and signing one's name at the bottom to signify agreement").

Since Plaintiffs have not identified who conducted the inspection or created the Estimate [23-3], neither Defendant nor the Court can test the reliability of the data and methods employed in repairing it. *See Parker v. State Farm Fire & Cas.*

*Co.*, No. 2:22-CV-45-HSO-BWR, 2023 WL 4169952, at *5 (S.D. Miss. May 22, 2023) (agreeing with the defendant's claim that because "it is unclear who truly created" the estimate relied on by the expert, "it is impossible to test the reliability of their methodology.").  On this record, Plaintiffs cannot meet their burden of showing that the bases and methodologies underlying the Estimate [23-3] are reliable, and the Court will therefore strike the June 7, 2023, Estimate [23-3]. [4]  *See Corinthian Ct. Holdings, LLC v. State Farm Fire & Cas. Co.*, No. 2:15-CV-111-KS-MTP, 2017 WL 1324135, at *4 (S.D. Miss. Apr. 6, 2017) ("Because the Court cannot fully evaluate the factual basis of and methodologies behind [the proffered expert's] opinions, the Court cannot find his expert testimony to be reliable.").

3.    <u>Lyon's Supplemental Report [25-19] offering causation opinions</u>

Defendant next challenges Lyon's Supplemental Report [25-19], disclosed after Plaintiffs' expert designation deadline but prior to the close of discovery. Mem. [24] at 15-17.  "[T]he purpose of supplementary disclosures is just that—to *supplement*. Such disclosures are *not* intended to provide an extension of the expert designation and report production deadline."  *Harmon v. Georgia Gulf Lake Charles L.L.C.*, 476 F. App'x 31, 36 (5th Cir. 2012) (emphasis in original) (quotations omitted).  Supplemental disclosures "are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information."

---

[4] Additionally, the June 7, 2023, Estimate [23-3] only provides damage estimates regarding unrepaired items, as it was compiled before Plaintiffs repaired their roof.  *See generally* June 7, 2023, Estimate [23-3]; Ex. [28-5].  Because the Court has already dismissed Plaintiffs' claims for damage to unrepaired items, the June 7, 2023, Estimate [23-3] is irrelevant and inadmissible under Federal Rule of Evidence 402 as to those items.

*Sierra Club*, 73 F.3d at 571. Here, Lyon's Supplemental Report [25-19] seeks to do just that, as it for the first time offers an expert causation opinion. *See* Supplemental Report [25-19] at 6.

Additionally, "courts have routinely rejected untimely 'supplemental' expert testimony where the opinions are based upon information available prior to the deadline for expert disclosures." *Lampe Berger USA, Inc. v. Scentier, Inc.*, No. CIV.A. 04-354-C-M2, 2008 WL 3386716, at *2 (M.D. La. Aug. 8, 2008). Lyon's Supplemental Report [25-19] relies upon information gathered by an unknown independent contractor during the June 7, 2023, inspection, Lyon's own inspection conducted on June 24, 2024, documentation provided to him, and interviews with Plaintiffs. Supplemental Report [25-19] at 3. With the exception of Lyon's inspection, this information was available to Plaintiffs well before the expert designation deadline of April 9, 2024, and Plaintiffs have not offered any explanation why Lyon could not have conducted his inspection before the deadline.

For these reasons, the Court concludes that the Supplemental Report [25-19] is not supplemental but is in fact a new expert report, such that it could and should have been disclosed by April 9, 2024. Having found the Supplemental Report [25-19] in violation of the Case Management Order [6], the Court turns to the four-factor analysis under Rule 37 to determine the proper sanction. *See Jagneaux*, 2020 WL 1821256, at *3-4.

Starting with the fourth factor, the explanation for the failure to comply with the Court's deadlines, Plaintiffs justify the late disclosure by stating that they paid

17

out-of-pocket to repair their roof in July 2023.[5]   Mem. [29] at 9-10.  But Plaintiffs

do not explain how the completion of these repairs prevented them from timely

disclosing the Supplemental Report [25-19] or why, if there was an issue, it could

not be resolved in the nine months between the completion of repairs and the

designation deadline of April 9, 2024.  *See id.*  As such, Plaintiffs have offered no

good faith explanation for their late disclosure of the Supplemental Report [25-19],

and it appears that they are attempting to disguise a new expert report as a

supplemental one to remedy their failure to provide timely expert opinions on

causation.  Because Plaintiffs have disregarded the Court's deadlines without

explanation, this factor heavily favors Defendant.

The third factor is the possibility of a continuance.  This weighs in favor of

Defendant because the case is scheduled for Pretrial Conference next month and a

continuance would only further delay this case, in essence rewarding Plaintiffs for

failing to timely disclose the Supplemental Report [25-19] without any justifiable

explanation.

The first factor is the importance of the witness's testimony.  *See Sierra Club*,

73 F.3d at 572.  Without Lyon, Plaintiffs cannot meet their burden of showing

causation and Defendant will be entitled to summary judgment.  *See Jackson*, 2024

WL 965613, at *10.  But even where the expert testimony is significant, "the

importance of such proposed testimony cannot singularly override the enforcement

of local rules and scheduling orders."  *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 381

---

[5] The receipts for roof repairs supplied by Plaintiffs are dated July 10 and 13, 2023.  Ex. [28-5] at 1-2.

(5th Cir. 1996) (quotations omitted). "Moreover, the claimed importance of Plaintiffs' expert testimony merely underscores the need for Plaintiffs to have complied with the court's deadlines or at least informed the trial judge in advance if good faith compliance was not possible." *Id.*

Turning to prejudice, Lyon had the benefit of possessing Defendant's expert report when he prepared the Supplemental Report [25-19], and Defendant's expert's ability to prepare his own report was impeded by not having access to Lyon's Supplemental Report [25-19]. *See, e.g.*, *Buchanan v. Gulfport Police Dep't*, No. 1:08CV1299-LG-RHW, 2011 WL 6326241, at *3 (S.D. Miss. Dec. 16, 2011) ("As a tactical matter, Plaintiff's expert had the benefit of Defendants' experts' opinions prior to generating his own expert report."). Defendant would also be required to expend time and financial resources to prepare a response to Lyon's new causation opinion, causing further prejudice.[6] On balance, the factors weigh in favor of excluding the Supplemental Report [25-19].

Plaintiffs argue that Defendant waived the right to challenge Lyon's expert designation by failing to file its motion thirty days before the discovery deadline. Mem. [29] at 6-8; *see also* L.U. Civ. R. 26(a)(3) ("Challenges as to inadequate disclosure of expert witness(es) must be made no later than thirty days before the discovery deadline or will be deemed waived."). But this does not foreclose the

---

[6] Plaintiffs maintain that any prejudice is mitigated because Defendant possessed the material used to make the Supplemental Report [25-19] before Defendant's expert designation deadline. Mem. [29] at 11. But this is not entirely true, as Lyon conducted an on-site inspection after Defendant's expert designation deadline. *See* Supplemental Report [25-19] at 6-7 (stating that Lyon was able to "clarify/revise [his] opinion of the damages sustained to the Hebbler Residence" because he "conducted an on-site inspection of the Hebbler Residence on 6/24/2024").

issue, as "a district judge retains discretion in enforcing Local Rule 26(a)(3) based on the circumstances[,]" *Keyes v. Techtronic Indus. Factory Outlets, Inc.*, No. 3:18-CV-671-DPJ-FKB, 2020 WL 5592694, at *4 n.1 (S.D. Miss. Aug. 4, 2020), and the Court has the authority under the Local Rules to strike an untimely designation sua sponte, *see* L.U. Civ. R. 26(a)(2)(B) ("An attempt to designate an expert without providing full disclosure information as required by this rule will not be considered a timely expert designation and may be stricken upon proper motion or *sua sponte by the court*." (emphasis added)); *see also Guthrie v. Quitman Cnty. Hosp., LLC*, No. 3:13-CV-244-M-A, 2014 WL 8276240, at *2 (N.D. Miss. Oct. 27, 2014) (opting not to enforce Local Rule 26(a)(3) where the plaintiff would have had to file his motion the same day he received the designation); *Perez v. Bruister*, No. 3:13CV1001-DPJ-FKB, 2014 WL 13002290, at *2 (S.D. Miss. July 25, 2014) (finding the circumstances of that case warranted striking the expert designation even though the plaintiffs first raised the issue more than two years after the discovery deadline).

Plaintiffs attempt to frame Defendant's argument as a challenge to the initial expert designation, when in fact Defendant is contending that the Supplemental Report [25-19] itself introduces new expert testimony and is therefore not supplemental. *See* Mem. [24] at 17. Plaintiffs served the Supplemental Report [25-19] thirty-five days before the discovery deadline, but after Plaintiffs' expert designation deadline. *See* Not. [22]. This would mean that Defendant would have had to file its challenge to Plaintiffs' disclosure no later than five days later. It would be unfair to permit Plaintiffs to violate their deadline for disclosing expert

reports by almost three months, and then penalize Defendant for failing to file its

Motion [23] to Strike by the deadline because Plaintiffs served the Supplemental

Report [25-19] mere days before it passed.  *See, e.g.*, *Guthrie*, 2014 WL 8276240, at

*2 ("[I]n order to timely object to the expert designation, Plaintiff would have had to

object the same day as he received the expert report.  This is clearly counter to due

process and the interests of justice, and would deprive Plaintiff of a meaningful

opportunity to respond."); *Perez*, 2014 WL 13002290, at *2 ("Neither party comes to

this motion with clean hands, but the Court concludes that [defendants' expert]

should not testify as an expert witness. This decision does not fit squarely within

the letter of the Uniform Local Rules. But neither would an order allowing the

testimony.").

On the whole, the Court finds that the circumstances of this case warrant

striking the Supplemental Report [25-19] sua sponte.  *See* L.U. Civ. R. 26(a)(2)(B).

### III.   CONCLUSION

The Court finds that Defendant's Motion [23] to Strike should be granted as

to Plaintiffs' expert Rich Lyon, and he will be excluded from testifying at trial.  This

means that Plaintiffs cannot make the requisite showing as to causation, and the

Court will grant Defendant's Motion [25] for Summary Judgment.  To the extent the

Court has not addressed any of the parties' remaining arguments, it has considered

them and determined that they would not alter the result.

      **IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant State Farm Fire and Casualty Company's Motion [23] to Strike Rich Lyon is **GRANTED**, and his opinions will not be permitted at trial.

      **IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendant State Farm Fire and Casualty Company's Motion [25] for Summary Judgment is **GRANTED**, and Plaintiffs Gregory Hebbler and Marion Hebbler's claims are **DISMISSED WITH PREJUDICE**.  The Court will enter a separate final judgment in accordance with Federal Rule of Civil Procedure 58.

      **SO ORDERED AND ADJUDGED**, this the 18th day of December, 2024.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE